**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE CUEVAS AND JUAN CARLOS REYES AKA "CESAR ACOSTA", <br><br> *Plaintiffs*, <br><br> -against- <br><br> LIC BUILDERS LTD., MONTEC INTERIORS, INC., BLUE DYNAMICS MANAGEMENT, INC., GERARD MCENTEE AND NIGEL MCENTEE. <br><br> *Defendants.* | No. 1:21-cv-04768-BMC |

**LIC BUILDERS LTD., MONTEC INTERIORS, INC., GERARD MCENTEE, AND NIGEL MCENTEE'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FIRST CAUSE OF <u>ACTION AGAINST DEFENDANTS PURSUANT TO FED. R. CIV. P. 56</u>**

**CERMELE & WOOD LLP**
*Attorneys for LIC Builders Ltd.,*
*Montec Interiors, Inc., Gerard*
*McEntee, and Nigel McEntee*
2 Westchester Park Drive, Suite 110
White Plains, New York 10604
(914) 967-2753
mike@cw.legal
ben@cw.legal

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………….. 1

STATEMENT OF FACTS…………………………………………………….. 2

    A. The Parties and Background……………………………………………... 2

    B. Blue Dynamics, Not the LIC Defendants, Employed Plaintiffs During
       2019-2020………………………………………………………………….. 3

    C. Plaintiffs Are Not Owed Overtime Under the FLSA………………………… 6

    D. Litigation History…………………………………………………………… 7

ARGUMENT…………………………………………………………………… 8

    I.      LEGAL STANDARD……………………………………………… 8

    II.    PLAINTIFFS' CLAIMS UNDER THE FLSA ARE TIME-BARRED… 9

    A.    Plaintiffs' Claims Against the LIC Defendants Accrued Over Two
        Years Before Filing the Complaint…………………………………… 9

    B.    Plaintiffs Cannot Circumvent the Statute of Limitations Based on a
        Joint Employer Theory with LIC's Subcontractor, Blue Dynamics…... 10

    III.   THE COURT SHOULD DECLINE TO EXERCISE
         SUPPLEMENTAL JURISDICTION…………………………………... 15

CONCLUSION………………………………………………………………….. 16

## **TABLE OF AUTHORITIES**

**CASE**                                                                                         **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………     8

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008)………     11

*Belvin v. Electchester Mgmt. LLC*, 15-cv-04924 (KAM) (PK),
2020 U.S. Dist. LEXIS 15914 (E.D.N.Y. Jan. 30, 2020)…………………………     9

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)…………………………..     15

*Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984)……………...     11

*Celotex v. Catrett*, 477 U.S. 317 (1986)………………………………………..     8

*Clark v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM) (DCF),
2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26 2010)…………………………     8, 9, 10

*Deac v. Il Postino, Inc.*, No. 12-cv-5952,
2014 U.S. Dist. LEXIS 126319 (E.D.N.Y. Aug. 15, 2014)………………………     9

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013)……………………………...     12

*Juarez v. Precision Apparel, Inc.*, No. 12-cv-2349,
2013 U.S. Dist. LEXIS 131169 (E.D.N.Y. Aug. 21, 2013)………………………     14

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006)…………...…....     9

*Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)…………….     11, 12, 13, 14

*Jean-Louis v. Metro. Cable Communs., Inc.*, 838 F. Supp. 2d 111
(S.D.N.Y. 2011)…………………………………………………………………....     13, 14

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998)……………………………...     15

*Mark v. Gawker Media LLC*, 13-cv-4347 (AJN),
2016 U.S. Dist. LEXIS 41817 (S.D.N.Y. Mar. 29, 2016)………………………...     15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………..     9

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)…………………………     9

*Ocampo v. 455 Hospitality LLC*, No. 14-cv-9614 (KMK),
2021 U.S. Dist. LEXIS 178875 (S.D.N.Y. Sept. 20, 2021)………………………     11-12

*Saunders v. City of N.Y.*, 594 F. Supp. 2d 346 (S.D.N.Y. 2008)………………….     10

*Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58 (2d Cir. 2018)……………………….     14

*Trask v. Town of Alma*, No. 1:19-cv-01192,
2020 U.S. Dist. LEXIS 204107 (W.D.N.Y. Oct. 30, 2020)………………………     11

**STATUTE**                                                      **PAGE(S)**

29 U.S.C. § 207(a)(1)……………………………………………………..     9

29 U.S.C. § 255(a)……………………………………………………...     9

**RULES & OTHER AUTHORITIES**                       **PAGE(S)**

Fed. R. Civ. P. 56…………………………………………………….     1

Fed. R. Civ. P. 56(a)…………………………………………………     8

Fed. R. Civ. P. 56(c)…………………………………………………     8

Fed. R. Civ. P. 56(e)…………………………………………………     8

Defendants L.I.C. Builders Ltd. ("LIC"), Montec Interiors, Inc., ("Montec"), Gerard McEntee ("Gerard"), and Nigel McEntee ("Nigel," and together with LIC, Montec, and Gerard, the "LIC Defendants"), respectfully submit this memorandum of law in support of their motion for an Order: (i) pursuant to Fed. R. Civ. P. 56 granting the LIC Defendants summary judgment on plaintiffs' first cause of action, (ii) declining to exercise supplemental jurisdiction over plaintiffs' New York State law claims, and (iii) for such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Plaintiffs Jose Cuevas ("Cuevas") and Juan Carlos Reyes ("Reyes" and together with Cuevas, the "Plaintiffs") sued the LIC Defendants on August 24, 2021 for supposedly not paying overtime wages in accordance with the Fair Labor Standards Act (the "FLSA"), and several alleged New York Labor Law ("NYLL") violations. One of the problems with Plaintiffs' allegations, besides being belied by timecards, pay stubs, invoices, and paychecks, is that Plaintiffs' employment with the LIC Defendants ended by March 2019. Yet, Plaintiffs did not sue until August 24, 2021. Therefore, their unpaid overtime claims are untimely under the FLSA's two-year statute of limitations.

Plaintiffs attempt to circumvent this time bar by alleging that they worked for LIC while receiving paychecks from defendant Blue Dynamics Management, Inc. ("Blue Dynamics") in 2019-2020. However, the undisputed evidence establishes that Blue Dynamics was a subcontractor for LIC on some of its jobs, had the sole power to terminate Plaintiffs, and had supervisory responsibility over Plaintiffs. None of the LIC Defendants hired Plaintiffs to work for Blue Dynamics, and it is undisputed that the LIC Defendants did not discipline Plaintiffs when they worked for Blue Dynamics. The LIC Defendants did not fire the Plaintiffs, either; that power

was reserved for Blue Dynamics under the terms of its subcontract with LIC.  Moreover, the LIC Defendants do not have any ownership interest in Blue Dynamics and are not officers or employees of Blue Dynamics.

Additionally, the evidence establishes that Blue Dynamics paid Plaintiffs all overtime owed.  Therefore, even if Plaintiffs could show that the LIC Defendants employed them in 2019-2020, the records and testimony establish that they were paid all overtime for this period. Accordingly, Plaintiffs' first cause of action, for violation of the FLSA, should be dismissed.  If the Court dismisses Plaintiffs' first cause of action (their only federal cause of action), it should decline to exercise supplemental jurisdiction over the Plaintiffs' remaining NYLL claims.

## STATEMENT OF FACTS

### A.  The Parties and Background

Montec was a business owned by Elaine McKenna.  *See* Exhibit 1 to the Declaration of Benjamin M. Rattner, dated February 21, 2022 (the "Rattner Declaration" or "Rattner Decl."; Exhibit 1 is hereinafter referred to as the "Gerard Tr.") at 31:5-22; LIC Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (the "SUMF") at ¶ 1.  Montec ceased operations in either 2017 or 2018 due to an inability to obtain appropriate insurance.  *See* Rattner Decl. Ex. 2 (hereinafter the "Nigel Tr.") at 31:21-32:3; Gerard Tr. 85:6-86:15; SUMF ¶ 2.  Montec performed sheetrocking and framing at construction sites.  *See* Gerard Tr.: 62:1-6; SUMF ¶ 3.

LIC was formed in 2016.  *See* Rattner Decl. Ex. 3; SUMF ¶ 4.  LIC installs drywall, acoustical ceilings, and glass walls.  Gerard Tr. 9:8-12; 88:25-90:1; SUMF ¶ 5.  Gerard is the President and owner of LIC.  Gerard Tr. 8:10-9:12; 23-9:12; SUMF ¶ 6.  Nigel is the project manager at LIC, and was a project manager at Montec.  *See* Nigel Tr. 40:21-42:1; SUMF ¶ 7.

Plaintiffs were tapers who worked for Montec and subsequently LIC.  Cuevas worked for Montec between January 25, 2017 and May 2, 2017.  *See* Exhibit 1 to the Declaration of Gerard

McEntee, dated February 21, 2022 (the "Gerard Decl."); *see also id.* Ex. 2; SUMF ¶ 8.  Thereafter, Cuevas worked for LIC between the weeks of May 3, 2017 and April 17, 2018.  *See* Gerard Decl. Exs. 3 & 4; SUMF ¶ 9.

Reyes worked for LIC between the weeks of October 10, 2018 and February 19, 2019. Gerard Decl. Ex. 5; SUMF ¶ 10.  Reyes was paid overtime for this period.  *See* Gerard Decl. Exs. 6 & 7; SUMF ¶ 11.  During 2016 and 2017, Reyes worked under the alias "Cesar Acosta."  Cesar Acosta worked for LIC between approximately the week ending May 19, 2017 and July 28, 2017. *See* Gerard Decl. Ex. 8; SUMF ¶ 12.  He also worked for Montec between June 1, 2016 through May 5, 2017.  *See* Gerard Decl. Ex. 9; SUMF ¶ 13.

Plaintiffs also worked for Blue Dynamics during 2019-2020.  *See* Rattner Decl. Ex. 4; Gerard Decl. ¶ 18 & Ex. 13; SUMF ¶ 14.  Blue Dynamics is a subcontractor that LIC occasionally uses to provide additional manpower on its jobs.  *See* Gerard Tr. 51:16-52:15; Nigel Tr. 47:21-22; 50:7-8; SUMF ¶ 15.  Gerard and Nigel McEntee do not own any interest in Blue Dynamics, and are not officers or employees of Blue Dynamics.  Gerard Decl. ¶ 16; Declaration of Nigel McEntee dated February 21, 2022 (the "Nigel Decl.") at ¶ 3; SUMF ¶ 16.

**B.  Blue Dynamics, Not the LIC Defendants, Employed Plaintiffs During 2019-2020**

On or about September 20, 2019, Blue Dynamics entered into a subcontract with LIC (the "Subcontract") pursuant to which it agreed to, *inter alia*, "[p]rovide Labor, to all L.I.C. Builders Ltd., jobsites as required.  Provide to L.I.C. Builders Ltd. weekly invoices with labor rate breakdowns per man."  Gerard Decl. Ex. 10 at LICD00081; SUMF ¶¶ 17-18.  The Subcontract further provided that "[a]ll Blue Dynamic Management, Inc., (hereinafter referred to as the subcontractor) employees' wages (including all taxes, deductions and benefits etc.), Workers

Compensation and General Liability Insurance is the subcontractor's complete responsibility." Gerard Decl. Ex. 10 at LICD00081; SUMF ¶ 19.[1]

In addition to the provisions relating to compensation, the Subcontract contains provisions that vests Blue Dynamics with control over the employees it pays.  For example, the Subcontract provides that it, not LIC, has the power to fire workers, and it requires that Blue Dynamics use its own tools and equipment rather than tools and equipment supplied by LIC.  *See* Gerard Decl. Ex. 10 at LICD0081 & 84; SUMF ¶ 20.  Furthermore, work was to be performed "at the direction of [Blue Dynamics'] superintendent and according to the job schedule of L.I.C. Builders Ltd."  *Id.* at LICD00081; SUMF ¶ 21.  Nigel's testimony underscores this point.  He testified that when Cuevas and Reyes worked for LIC, he would assign them their worksites, but when they were working for Blue Dynamics, the location where Cuevas and Reyes worked was up to Blue Dynamics.  *See* Nigel Tr. 65:14-23.  Anissa Haoua, the President of Blue Dynamics, signed the Subcontract on its behalf.  *See* Gerard Decl. Ex. 10; SUMF ¶¶ 24, 25.

Consistent with the terms of the Subcontract, Blue Dynamics and LIC had different supervisors and foremen.  *See* SUMF ¶¶ 22-23.  Plaintiffs identified the following foreman as LIC foremen: Oscar Hernandez, Johnny, Mark, Moises, Manuel, Jermaine, and Phil.  *See* Rattner Decl. Ex. 5 at Response to Interrogatory No. 2.  Nigel McEntee confirmed in his depositions that Johnny Waters, Manuel Barrentius, Mark Roach, and Moses Tapia are LIC foremen.  *See* Nigel Tr. 43:18-44:10.  Reyes testified in his deposition that at the end of his time allegedly working for "LIC," he

---

[1] Blue Dynamics supplied insurance certificates to LIC beginning on September 20, 2019.  *See* Gerard Decl. Ex. 11; SUMF ¶ 26.  In addition to the Subcontract, on or about June 12, 2020 LIC and Blue Dynamics entered into a COVID-19 Indemnification Agreement (the "Indemnification Agreement").   Gerard Decl. Ex. 12; SUMF ¶ 27.  The Indemnification Agreement provides in relevant part that "Subcontractor warrants and agrees that Subcontractor are not employees of L.I.C. Builders and that Subcontractor has all appropriate and required workers compensation insurance, unemployment insurance, and liability insurance coverages in place for any Services provided any Service Provider."  Gerard Decl. Ex. 12 at LICD00075 [*sic*]; SUMF ¶ 28.  Anissa Haoua, as President of Blue Dynamics, executed the Indemnification Agreement on its behalf.  *See* Gerard Decl. Ex. 12 at LICD00076; SUMF ¶¶ 24, 29.

worked on a project on Bergen Street for nearly a year.  *See* Rattner Decl. Ex. 6 (hereinafter the "Reyes Tr.") at 61:13-17.  He worked under a foreman named Arnold, who directed him where to work and what to do on that project.  *See* Reyes Tr. 94:13-23.  However, Arnold is not an LIC foreman, as evidenced by the fact that Plaintiffs failed to identify him in their interrogatory responses, and the LIC Defendants did not identify him as a foreman despite intense questioning about LIC's foremen by Plaintiffs' counsel.  *See* Rattner Decl. Ex. 5 at Response to Interrogatory No. 2; Nigel Tr. 43:18-44:10; SUMF ¶¶ 22-23.

Additionally, the testimony establishes that Gerard and Nigel McEntee did not personally employ Plaintiffs.  Indeed, Reyes confirmed that while he was working at LIC, Gerard did not provide Reyes with a work schedule, did not discipline him, did not speak with him about wages, pay rate, or overtime hours.  *See* Reyes Tr. 85:10-86:5; SUMF ¶¶ 30-31.  Likewise, Reyes testified that Nigel did not direct him about how to perform his work at any time.  *See* Reyes Tr. 107:19-23; SUMF ¶ 32.  Similarly, Cuevas testified that he was never disciplined or reprimanded by anyone while working for LIC.[2]  *See* Rattner Decl. Ex. 7 (hereinafter the "Cuevas Tr.") at 48:14-49:6; SUMF ¶ 33.  Although Nigel visited jobsites where Blue Dynamics was supplying LIC with labor, he was only onsite for short periods and did not tell Plaintiffs how to perform their work; rather, he conferred with the foremen to ensure the job was proceeding properly.  *See* Nigel Tr. 48:7-14; SUMF ¶ 34.  Indeed, Nigel did not hire Plaintiffs to work at Blue Dynamics, did not set their rate of pay there, or terminate them from employment at Blue Dynamics.  *See* Nigel Decl. ¶¶ 4-6; *see also* Gerard Decl. ¶¶ 21-23; SUMF ¶ 35.

---

[2] Plaintiffs' theory of the case is that Blue Dynamics is interchangeable with LIC, and thus they refer to working for LIC instead of Blue Dynamics throughout their testimony.  *See, e.g.*, Cuevas Tr. 27:6-14.

**C.** <u>**Plaintiffs Are Not Owed Overtime Under the FLSA**</u>

Manual laborers working on a job awarded to LIC had to use a time-keeping app on their mobile phones called ExakTime. *See* Gerard Tr. 111:23-112:11; Gerard Decl. ¶ 3; SUMF ¶ 36. ExakTime is a GPS-based app that clocks into the address of the job. Gerard Tr. 112:9-11. "[O]n the app you have, literally, green for clocking in and you have red for clocking out." *See* Nigel Tr. 52:17-21; SUMF ¶¶ 37-38. According to Reyes, the ExakTime app worked as follows: "The office would send me a code and a password to enter, then location will come up through the GPS. [A]nd I will click on the location, then I will click in then when I would leave the job I would click stop." Reyes Tr. 63:21-24; *see* SUMF ¶¶ 37-39. The day's hours were then submitted automatically. *See* Reyes Tr. 63:25-64:13. Likewise, Cuevas routinely punched in and out of jobsites while working for LIC and Blue Dynamics. *See* Cuevas Tr. 75:13-77:22; Gerard Decl. Exs. 3 & 13; SUMF ¶ 39. LIC required Blue Dynamics to have its workers use ExakTime when they worked on LIC jobs so that LIC could verify the accuracy of the invoices Blue Dynamics submitted to it for payment. Gerard Decl. ¶ 17; SUMF ¶ 42. Plaintiffs worked for Blue Dynamics on LIC jobsites beginning in early November, 2019, and continuing until the end of October, 2020. *See* Gerard Decl. Ex. 13; *see* SUMF ¶¶ 43, 47.

There were no complaints by any of the workers at LIC about the accuracy or the malfunctioning of the ExakTime app. *See* Nigel Tr. 57:12-21; *see* SUMF ¶ 44. Moreover, Reyes never complained to Nigel that he was owed overtime hours while working for LIC or on an LIC project. *See* Nigel Tr. 74:15-19; SUMF ¶ 44. In fact, Reyes admitted that he was not owed overtime from at least as early as October 2019 in the following colloquy:

> Q: Now, let's look at paragraph 63 [of the Amended Complaint]. It reads: "During the entire period of their employment plaintiffs were never paid an overtime premium for the hours they worked." Do you see that, sir.

> A: Yes.  From October 2019 is when they started overtime approximately.
>
> Q: So again, you'd agree with me that paragraph 63 as written is not correct?
>
> A: No, it needs to be more specific with dates.

Reyes Tr. 125:21-126:8 (testifying about Rattner Decl. Ex. 8).  In other words, Reyes admitted that he was paid for all overtime hours from at least October 2019 forward, and the LIC Defendants' records establish that he did not work for them or Blue Dynamics between March 2019 and October 2019.  *See* SUMF ¶¶ 10, 43, 45.  Accordingly, Reyes has admitted he is not owed any overtime since at least August of 2019.  *See* SUMF ¶¶ 10, 43, 45.

Moreover, the undisputed evidence establishes that Cuevas is not owed any overtime during this time period, either.  Cuevas worked for Blue Dynamics on LIC jobsites between November 6, 2019 and October 28, 2020.  Gerard Decl. Ex. 13; SUMF ¶ 47.  Blue Dynamics invoiced LIC for Cuevas's time, including overtime hours.  *See, e.g.*, Gerard Decl. Ex. 14; SUMF ¶ 48.  The invoices reflect hours worked by Cuevas (and Reyes), his hourly rate and the amount Blue Dynamics paid to Cuevas (and Reyes).  *See* Gerard Decl. Ex. 14; SUMF ¶ 49.  Where applicable, corresponding overtime pay is included on these invoices.  *See* Gerard Decl. Exs. 14 & 15; SUMF ¶ 49.  Moreover, checks issued to Cuevas indicate the number of hours worked, including overtime.  *See, e.g.*, Rattner Decl. Ex. 4; SUMF ¶ 50.  When one compares the hours on the Blue Dynamics checks to the corresponding invoice issued to LIC, the hours match, and the payment includes all overtime wages.  *Compare, e.g.*, Rattner Decl. Ex. 4 at P9 *with* Gerard Decl. Exs. 14 & 15.

### D.  <u>Litigation History</u>

Plaintiffs filed this lawsuit on August 24, 2021.  ECF No. 1.  Thereafter, on December 29, 2021 Plaintiffs amended their complaint.  ECF No. 20.  The Amended Complaint alleges causes of action for failure to pay overtime wages under the FLSA (the first cause of action), failure to

pay overtime under the NYLL (the second cause of action), violation of notice and record keeping requirements of the NYLL (the third cause of action), and violation of the wage statement provisions under the NYLL (the fourth cause of action). The LIC Defendants answered the Amended Complaint on January 11, 2022, asserting numerous affirmative defenses including that "Plaintiffs' claims are barred, in whole or in part, by statute of limitations." ECF No. 23 & Rattner Decl. Ex. 8. The LIC Defendants indicated their intention to make the instant motion during a February 10, 2022 telephonic conference with the Court.

## ARGUMENT

### I.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party is entitled to summary judgment when there is 'no genuine dispute as to any material fact' and the undisputed facts warrant judgment of the moving party as a matter of law." *Clark v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM) (DCF), 2010 U.S. Dist. LEXIS 33264, at * 24 (S.D.N.Y. Mar. 26 2010) (quoting and citing Fed. R. Civ. P. 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant makes this showing, the "nonmoving party must present specific facts showing a genuine issue for trial, and may not rely on conclusory allegations or unsubstantiated speculation. *See* Fed. R. Civ. P. 56(e); *Clark*, 2010 U.S. Dist. LEXIS 33264, at *25 (quotations and citations omitted). To defeat a summary judgment motion, the nonmoving party "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.     PLAINTIFFS' CLAIMS UNDER THE FLSA ARE TIME-BARRED

### A.  Plaintiffs' Claims Against the LIC Defendants
### Accrued Over Two Years Before Filing the Complaint

The FLSA requires that employers pay covered employees one-and-a-half times the regular hourly rate for hours worked over 40 hours per week. *See* 29 U.S.C. § 207(a)(1). An employer may demonstrate proper payment of all hours worked and overtime by producing time records from a punch in system. *See, e.g.*, *Deac v. Il Postino, Inc.*, No. 12-cv-5952, 2014 U.S. Dist. LEXIS 126319, at *12, *14, *16 (E.D.N.Y. Aug. 15, 2014) (recommending dismissal of plaintiff's FLSA claims as time-barred to the extent there was a punch in system installed and in place for some of the claim period).[3]

Claims under the FLSA for unpaid overtime must be brought within two years, "except that the limitations period is three years for a claim arising out of a 'willful' violation." *Clark*, 2010 U.S. Dist. LEXIS 33264, at *25-26; 29 U.S.C. § 255(a). "A cause of action accrues at "each payday following an allegedly unlawful pay period." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006).

An employer willfully violates the FLSA only if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Generally, an action is "willful" if it was "voluntary, deliberate, or intentional." *See McLaughlin*, 486 U.S. at 133 (internal quotations and citations

---

[3] Pay stubs and sign in sheets constitute admissible evidence for purposes of summary judgment. *See Belvin v. Electchester Mgmt. LLC*, 15-cv-04924 (KAM) (PK), 2020 U.S. Dist. LEXIS 15914, at *10 n.4 (E.D.N.Y. Jan. 30, 2020).

omitted).  Plaintiffs have the burden of demonstrating willfulness and thereby increasing the length of the statute of limitations from two to three years.  *See Clark*, 2010 U.S. Dist. LEXIS 33264, at *29; *Saunders v. City of N.Y.*, 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008).  To meet this burden, a plaintiff must make a "competent demonstration that there [is a] trial worthy issue as to whether [the employer] either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."  *Clark*, 2010 U.S. Dist. LEXIS 33264, at *29.

The undisputed evidence establishes that the LIC Defendants are entitled to summary judgment on Plaintiffs' FLSA claims because those claims are time-barred.  Neither Plaintiff worked for Montec after it ceased operations in 2017 or 2018.  Moreover, LIC has produced timecards and payroll reports that show when Plaintiffs worked for LIC.  These records establish that Cuevas stopped working for LIC in April 2018.  *See* Gerard Decl. Exs. 3 & 4; SUMF ¶ 9.  As such, his FLSA claims are time-barred against the LIC Defendants regardless of whether Plaintiffs can show that the LIC Defendants' conduct was "willful."  Moreover, Reyes did not work for LIC after the week of February 19, 2019.  *See* Gerard Decl. Exs. 5 & 6; SUMF ¶ 10.  Additionally, Reyes' paystubs, when compared with his timecards, establish that he was paid for overtime for all hours worked.  *Compare* Nigel Decl. Ex. 5 *with id.* Ex. 6; SUMF ¶ 11.  Therefore, Reyes's claim accrued by February 2019 at the latest, and the LIC Defendants could not have willfully violated the FLSA as to him.  Plaintiffs did not file this lawsuit until August 24, 2019—over two years after their last possible claim accrued.  Accordingly, Plaintiffs' FLSA claim is time-barred and should be dismissed with prejudice.

## B.  Plaintiffs Cannot Circumvent the Statute of Limitations Based on a Joint Employer Theory with LIC's Subcontractor, Blue Dynamics

Plaintiffs cannot circumvent the FLSA's statute of limitations by claiming that the LIC Defendants employed them while they were working for Blue Dynamics.  The test for joint

employment is "based on the circumstances of the whole activity viewed in light of economic reality." *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (citations and quotations omitted). Formal control is an essential element of this economic reality test, although there is no requirement that a putative employer continuously monitor an employee for such a relationship to be established. *See Trask v. Town of Alma*, No. 1:19-cv-01192, 2020 U.S. Dist. LEXIS 204107, at *39 (W.D.N.Y. Oct. 30, 2020). The test for formal control involves weighing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).

A court may also consider additional factors to determine if a joint employer relationship exists because the Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Carter v. Dutchess Community College*, 735 F.2d 8, 12 n.1 (2d Cir. 1984)). Some of these additional factors include:

> (1) whether the [putative employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [putative employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [putative employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [putative employer].

*Zheng*, 355 F.3d 61 at 72. Additionally, "operational control is relevant in determining whether an individual is an employer under the FLSA." *Ocampo v. 455 Hospitality LLC*, No. 14-cv-9614

(KMK), 2021 U.S. Dist. LEXIS 178875, at *19 (S.D.N.Y. Sept. 20, 2021) (citation and internal quotations omitted).  Operational control exists if the individual's "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).

Here, the LIC Defendants did not exercise formal control over the Plaintiffs while they worked at Blue Dynamics.  To begin, it is undisputed that Blue Dynamics was a subcontractor for LIC.  As the Second Circuit recognized in *Zheng*, it is important to "limit [] FLSA liability to cases in which defendants, based on the totality of the circumstances, function as employers of the plaintiffs rather than mere business partners of plaintiffs' direct employer" to ensure that the FLSA "is not interpreted to subsume typical outsourcing relationships."  *Zheng*, 355 F.3d at 76.

The Subcontract delineates the parties' responsibilities.  Indeed, it makes clear that Blue Dynamics, not LIC, had the power to fire employees such as Plaintiffs.  *See* Gerard Decl. Ex. 10; SUMF ¶ 20.  Furthermore, it is undisputed that none of the LIC Defendants disciplined Plaintiffs or fired them when they were receiving Blue Dynamics paychecks.  *See* Nigel Decl. ¶ 6; Gerard Decl. ¶ 23; Cuevas Tr. 48:14-49:6; Reyes Tr. 85:10-86:5; SUMF ¶¶ 31, 33, 35.  Moreover, none of the LIC Defendants determined what rate to pay Plaintiffs when they worked at Blue Dynamics, or how they would be paid.  Nigel Decl. ¶ 5; Gerard Decl. ¶ 22; SUMF ¶¶ 31, 35.[4]  Rather, Blue Dynamics issued checks to Plaintiffs and billed LIC for the hours worked and pay rates of Plaintiff. *See* Gerard Decl. Exs. 14 & 15; Rattner Decl. Ex. 4; SUMF ¶¶ 48-50.  As such, Blue Dynamics set the Plaintiffs' rate of pay and determined their method of payment.

Regarding employment records, LIC has Plaintiffs' timecards while they worked at Blue Dynamics simply to verify that the invoices received from Blue Dynamics do not inflate the

---

[4] Moreover, Cuevas testified that even when began working for Montec, Nigel did not set his rate of pay.  *See* Cuevas Tr. 40:4-6.

number of hours LIC is being charged.  *See* Gerard Decl. ¶ 17; SUMF ¶ 42.   This practice is akin to Time Warner Cable's practice of keeping documents that it used to verify its subcontractor correctly calculated the amount of work its technicians actually performed.  *See Jean-Louis v. Metro. Cable Communs., Inc.*, 838 F. Supp. 2d 111, 130 (S.D.N.Y. 2011) (dismissing FLSA claim against putative joint employer, Time Warner Cable).  There is no evidence in the record that the LIC Defendants paid Plaintiffs based on these timecards.  Rather, LIC paid Blue Dynamics based on the invoices it received from that subcontractor.  Blue Dynamics then issued checks that included overtime wages to Plaintiffs.  *See* Rattner Decl. Ex. 4; Reyes Tr. 125:21-126:8; SUMF ¶¶ 49-50.

Moreover, the Subcontract provides that work on LIC projects is to be performed is to be under the supervision of Blue Dynamics' superintendents.  Gerard Decl. Ex. 10 at LICD00081; SUMF ¶ 21.  That is what occurred.  Indeed, Reyes testified that he worked at the direction of Arnold while working at Bergen Street for approximately a year beginning around 2019 or 2020. *See* Reyes Tr. 61:7-17.  Arnold was not among the foremen listed by Nigel McEntee as employed by LIC, nor does Arnold appear as one of the foremen listed in Plaintiffs' interrogatory responses. *See* Rattner Decl. Ex. 5 at Response to Interrogatory No. 2; Nigel Tr.: 32:16-34:1; 43:18-44:10; SUMF ¶ 23.  Moreover, the Bergen Street job appears on Blue Dynamics' time sheets from ExakTime, further underscoring that Blue Dynamics was responsible for maintaining Plaintiffs' payroll records and paying Plaintiffs during 2019-2020.  *See* Gerard Decl. Ex. 13 at LICD00193; SUMF ¶¶ 42, 48-50.

Although there is evidence in the record that Nigel visited jobsites where Blue Dynamics was providing labor, these visits do not establish that he (or any of the LIC Defendants) controlled Plaintiffs while they worked for Blue Dynamics.  In *Zheng*, the Second Circuit held that

"supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement. *Zheng*, 355 F.3d at 75; *see also Jean-Louis*, 838 F.Supp.2d at 126 (dismissing FLSA claim for unpaid overtime brought by subcontractor's employees against contractor). Here, Nigel testified that as a project manager he visited jobsites to ensure the quality of the work being produced and that work was being completed on schedule. *See* Nigel Tr. 36:1-4; SUMF ¶ 34. These facts do not suffice to impose liability on him (or any of the other LIC Defendants) as an employer. *See Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 62 (2d Cir. 2018); *see also Juarez v. Precision Apparel, Inc.*, No. 12-cv-2349, 2013 U.S. Dist. LEXIS 131169, at *20 (E.D.N.Y. Aug. 21, 2013) (holding that although individual defendant "may have supervised employees, there is no indication that she had the power to hire or fire them, to determine their rate of pay, or that she maintained records" and therefore even though she was their supervisor who occasionally issued them payment, plaintiffs failed to establish that she was their "employer" under the FLSA). Accordingly, all four *Carter* factors weigh in favor of holding that the LIC Defendants were not employers under the FLSA when Plaintiffs worked for Blue Dynamics.

Even if the LIC Defendants had not established all of the *Carter* factors, they would nonetheless be entitled to dismissal of Plaintiffs' FLSA claim because they did not exercise functional control over Plaintiffs. Indeed, Blue Dynamics had to provide tools and equipment for Plaintiffs to use. Gerard Decl. Ex. 10; SUMF ¶ 20. Moreover, Blue Dynamics has its own office at a different address from LIC (*see* Gerard Decl. Exs. 14 & 15), and the Subcontract does not prevent Blue Dynamics from contracting with other entities to provide labor. *See* Nigel Decl. Ex. 10. Neither Nigel nor Gerard had any role within Blue Dynamics, and they did not personally maintain payroll records for Plaintiffs, either. *See* Gerard Decl. ¶ 16 & Nigel Decl. ¶ 3; Gerard Tr.

93:1-94:13; SUMF ¶ 16.   Additionally, the time records in this case establish conclusively the dates when Plaintiffs worked for LIC and Blue Dynamics.   Punching in and out of LIC jobsites was required for all laborers.   Thus, the months-long gaps between when Plaintiffs worked for LIC and when they started working for Blue Dynamics on LIC worksites are periods when they may have worked for other employers or worked for Blue Dynamics on non-LIC projects.   Accordingly, when viewed in totality, the undisputed evidence establishes that the LIC Defendants did not jointly employ the Plaintiffs with Blue Dynamics and their FLSA claim against the LIC Defendants should be dismissed with prejudice.

### III.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

If the Court dismisses Plaintiffs' FLSA claim (the first cause of action), it should decline to exercise supplemental jurisdiction.   Generally, where a plaintiff's "federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *see, e.g.*, *Mark v. Gawker Media LLC*, 13-cv-4347 (AJN), 2016 U.S. Dist. LEXIS 41817, at *44 (S.D.N.Y. Mar. 29, 2016) (declining to exercise supplemental jurisdiction over NYLL claims where plaintiffs' FLSA claims were all time barred, and constituted the only federal claims in the litigation).   Nonetheless, the Court has discretion to retain supplemental jurisdiction over Plaintiffs' claims if doing so would serve the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)*.

Here, these factors weigh in favor of declining to exercise supplemental jurisdiction.   The only claims left involve New York State law.   Moreover, the parties have already exchanged written discovery and taken depositions, so if the Court dismisses Plaintiffs' NYLL claims without prejudice, litigation in New York State Court may be expedited.   Furthermore, declining to exercise supplemental jurisdiction over the state law claims would serve the issues of comity by

letting New York State Courts rule on New York State law.   Therefore, the LIC Defendants respectfully request that the Court decline to exercise jurisdiction over the NYLL claims (the second through fourth causes of action) if it dismisses Plaintiffs' FLSA claim against the LIC Defendants.

## CONCLUSION

For the foregoing reasons, the LIC Defendants respectfully request that the Court dismiss Plaintiffs' first cause of action, for violation of the FLSA, decline to exercise supplemental jurisdiction over Plaintiffs' New York State law claims, and award such other and further relief as is just and proper.

Dated: February 21, 2022
     White Plains, New York

CERMELE & WOOD LLP

By:  /s/ Benjamin M. Rattner
    Michael R. Wood
    Benjamin M. Rattner
    *Attorneys for the LIC Defendants*
    2 Westchester Park Drive, Suite 110
    White Plains, New York 10604
    (914) 967-2753
    mike@cw.legal
    ben@cw.legal