UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
JOSE CUEVAS and JUAN CARLOS REYES    :
a/k/a Cesar Acosta,                              :
                                       :
          Plaintiffs,              :   **MEMORANDUM DECISION**
                               :   **AND ORDER**
       - against -           :
                               :   21-cv-4768 (BMC)
L.I.C. BUILDERS LTD.; MONTEC        :
INTERIORS, INC.; BLUE DYNAMICS    :
MANAGEMENT, INC.; GERARD McENTEE  :
and NIGEL McENTEE,            :
                               :
         Defendants.          :
------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs Jose Cuevas and Juan Carlos Reyes bring this case under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"),

N.Y. Lab. Law § 650 *et seq.*, alleging that defendants failed to pay them proper overtime wages,

post wage notices and statements, and provide spread of hours pay.  Defendants Montec

Interiors, Inc., LIC Builders, LTD ("LIC"), Gerard McEntee, and Nigel McEntee move for

summary judgment on plaintiffs' FLSA claims.  They contend that plaintiffs' FLSA claims fall

outside the statute of limitations and the Court should not exercise supplemental jurisdiction on

the remaining state law claims.  For the reasons discussed below, I deny defendants' motion with

respect to Cuevas and grant it with respect to Reyes.

### BACKGROUND

Cuevas was employed by defendants continuously between January 2017 and November

2020.  He worked for Montec from January 25, 2017, to May 2, 2017, LIC from May 3, 2017, to

April 17, 2018, and Blue Dynamics Management starting in 2019 and ending in November 2020.

Reyes worked for defendants as a Commercial "Taper" between June 2016 and October 2020.  Under the alias "Cesar Acosta," Reyes worked for Montec from June 1, 2016 until May 5, 2017, and LIC from approximately May 19, 2017 until July 28, 2017.  Reyes then returned to LIC to work under his real name from October 10, 2018 until February 19, 2019.  He then worked for Blue Dynamics from approximately April 2019 until October 2020.

According to defendants, Montec, which performed sheet-rocking and framing at construction sites, ceased operation in either 2017 or 2018.  After Montec closed, LIC, which installs drywall, acoustical ceilings, and glass walls, was registered in May 2018.  On September 20, 2019, LIC entered into a subcontracting agreement with Blue Dynamics.  According to the contract, Blue Dynamics agreed to provide labor to LIC jobsites and send weekly invoices for the labor rate per person.

Both plaintiffs testified at deposition that they were periodically paid some overtime but not in a manner commensurate with the time they actually worked.  Plaintiffs also stated that during their employment with all the defendant companies, they had continuous contact with defendant Nigel McEntee, a project manager for Montec and LIC.  Plaintiffs testified that between 2017 and 2020, Nigel would coordinate their pay, give them work assignments, and review their work.

All defendants, save for Blue Dynamics, have appeared in this action.  At the close of discovery, the appearing defendants moved for summary judgment on the ground that the undisputed facts show that Blue Dynamics is a separate entity and any FLSA violations occurred outside the statute of limitations.

**DISCUSSION**

Defendants' contention that the statute of limitations has run on plaintiffs' FLSA claims against the McEntees, LIC, and Montec rests on three points.  First, the FLSA claims are subject to a two-year statute of limitations because any violation of the FLSA was not "willful," as contemplated by 29 U.S.C. § 255(a).  Second, Blue Dynamics, LIC, and Montec are distinct companies and Gerard McEntee and Nigel McEntee do not have ownership or control of Blue Dynamics.  As a result, even if some of plaintiffs' claims against Blue Dynamics fall within the statute of limitations, any additional FLSA violations brought against the other defendants cannot be maintained because they occurred while Blue Dynamics was plaintiffs' sole employer.  Third, even if all defendants are liable under a joint employer theory or an expanded statute of limitations, the undisputed facts show no FLSA violations occurred within the statute of limitations period.  These positions are unavailing as to Cuevas because material disputes of fact exist as to each of defendants' arguments.  However, Reyes's evidence is insufficient to maintain his FLSA claim.

## I.      Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  If the movant successfully does this, the burden shifts to the opposing party to "offer

some hard evidence showing that its version of the events is not wholly fanciful." See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

Additionally, to survive summary judgment, the nonmoving party must go beyond the pleadings and establish, through "specific facts," that there is a genuine issue of material fact that must be resolved by a trier of fact. Fed. R. Civ. P. 56(e); Jones v. Denver Post, 203 F.3d 748, 756 (10th Cir. 2000). Conclusory allegations and self-serving affidavits are not sufficient. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("The plaintiff could not rest on his allegations of a conspiracy to get to a jury without any significant probative evidence tending to support the complaint").

## II. Willfulness

The FLSA provides a two-year statute of limitations on actions to enforce its provisions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "[T]o prove a willful violation of

the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995) (quotation marks omitted); Cf. Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("mere negligence" or unreasonableness on the employer's part is not sufficient to establish a willful violation.).  It is not enough to prove that the defendant should have known it was violating the law.  The reckless disregard standard requires actual knowledge of a legal requirement, and deliberate disregard of the risk of violating it.  Trans World Airlines v. Thurston, 469 U.S. 111, 126 (1985) (adopting a definition of "willful" in the FLSA as referring to conduct that "show[s] a disregard for the governing statute" and is "marked by careless disregard [for] whether or not one has the right so to act").

A "plaintiff bears the burden of proof" on the issue of willfulness for statute of limitations purposes.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999).  Overall, "[a]lthough [a defendant's] willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high."  Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013).

Cuevas provides text messages, payment records, and testimony demonstrating multiple instances where defendants owed plaintiffs overtime and declined to pay.  This evidence includes paystubs showing occasions where Cuevas was paid overtime, at the appropriate time-and-a-half rate, and others where he was not.  Additionally, both plaintiffs testified that defendants altered business records to improperly reduce the hours plaintiffs worked to justify paying them less.

There is no record evidence, such as admissions or confessional communications, that establishes defendants actually knew they were violating the FLSA.  But plaintiffs' testimony

5

and Cuevas's other evidence permits a finding of reckless disregard of the risk that the time

tracking at issue violated the law.  Specifically, a jury could reasonably infer from the time slips,

text conversations, and testimony presented by Cuevas that defendants knew, or recklessly

disregarded, that they were required to pay defendants time-and-a-half for every hour worked

over 40 in a week.  That same jury could also review plaintiffs' testimony and text messages

concerning their missing overtime hours and find that defendants knew plaintiffs needed to be

compensated and still never paid them.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 615

(1993); cf. Fed. Hous. Fin. Agency v. Deutsche Bank AG, 903 F. Supp. 2d 285, 291 (S.D.N.Y.

2012) (whether the defendants intended to comply with the FLSA is a question of fact "that is

inappropriate for resolution on a motion to dismiss.").  As a result, 29 U.S.C. § 255(a) extends

plaintiffs' statute of limitations to three years.  This means that in order to maintain their FLSA

claims, each plaintiff must produce evidence of an FLSA violation dating on or after August 24,

2018.

### III.   Joint-Employer

The FLSA contemplates that more than one employer [can] be responsible for violations

of the statute.  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  To determine

whether putative joint employers should be deemed to have been plaintiffs' joint employer,

courts in the Second Circuit evaluate "the circumstances of the whole activity, viewed in light of

economic reality." Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir. 2003).  A joint

employment relationship can be found where the court concludes that a putative joint employer

exercises either formal control or functional control over plaintiffs.  See Barfield v. N.Y.C.

Health and Hosps. Corp., 537 F.3d 132, 142–43 (2d Cir. 2008).  In this instance, the formal

control test is satisfied.

6

To determine formal control, Second Circuit courts consider whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter, 735 F.2d 8, 12 (2d Cir. 1984). "[W]hen an entity exercises those four prerogatives, that entity, in addition to any primary employer, must be considered a joint employer." Zheng, 355 F.3d at 67.

Defendants' point to the separate ownership of LIC and Blue Dynamics, the subcontract between Blue Dynamics and LIC, and the two companies' different methods of payment to show that LIC and Blue Dynamics were separate employers. But plaintiffs' testimony, text messages, and career path raise several disputes of material fact on the issue of joint employment. Both plaintiffs testified that Nigel McEntee hired them, fired them, evaluated their work, controlled their schedule, and paid them throughout their three to four years of employment. Indeed, during their depositions, plaintiffs only referred to the employer corporations as either Montec or LIC. They only mentioned Blue Dynamics when asked, and stressed that the only thing that appeared to change in 2019 was the name of their employer on their checks and paystubs. Additionally, Cuevas submitted text messages dating from June 10, 2018 to December 29, 2020, demonstrating that during his time at LIC and Blue Dynamics, Nigel McEntee controlled Cuevas's tasks, work, and pay.

Separately, plaintiffs' career path is, itself, evidence of the plaintiffs' joint employment. First, plaintiffs were employed by Montec, whose CEO is defendant Gerard McEntee. Next, when Montec closed, plaintiffs received immediate employment from LIC, which was owned by Gerard and operated by both Gerard and his brother Nigel. Finally, plaintiffs "left" LIC only to join Blue Dynamics which just happened to be a subcontractor for LIC. During plaintiffs' entire

7

employment with Blue Dynamics, plaintiffs only appeared to work on jobs where LIC claims it was just a general contractor.  Moreover, plaintiffs testified that during their time with Blue Dynamics, Nigel continued to direct and manage their employment.  Thus, a jury could reasonably conclude from this dispute that defendants jointly employed plaintiffs.

> **IV.     FLSA Violations**

"Courts have held that for the purposes of establishing the statute of limitations under [the] FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period."  Addison v. Reitman Blacktop Inc., 283 F.R.D. 74, 81 (E.D.N.Y. 2011).  Therefore, plaintiffs' FLSA claims started accruing on the payday after their last allegedly unlawful pay period.  See Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 278 (E.D.N.Y 2015).

Cuevas provides documents, text messages, and testimony pointing to particular instances when he was not properly compensated for his overtime.  Specifically, Cuevas submitted paystubs ranging from April 7, 2017, to February 9, 2018, demonstrating that on each of these occasions, LIC and Montec only paid him the regular hourly rate despite his working substantial amounts of overtime.  None of these instances occurred within the three-year statute of limitations, which requires at least one violation on or after August 24, 2018.  However, Cuevas also presents text conversations with Nigel from August 24, 2018, and February 25, 2019, both dates within the statute of limitations, where Cuevas informed Nigel that his paystubs did not reflect the hours he worked.  The content and meaning of these text conversations is corroborated by Cuevas's testimony, during which Cuevas recalls complaining to Nigel about the missing hours several times, but that Nigel never reimbursed him.

Reyes also testified that he repeatedly talked to Nigel about defendants' erroneous time records as well as their failure to pay him for hours actually worked.  His declaration provided some further specificity, stating that

> [f]rom the beginning of my employ until sometime in late 2018, possibly October, Defendants paid overtime at my regular rate with no premium. . . . Sometime in late 2018, the Defendants paid me overtime premiums intermittently.  By mid to late 2019, the Defendant[s] did begin to pay a premium for overtime hours but they continued to mismark my hours worked.

However, unlike Cuevas, Reyes does not provide any evidence of precise instances where he was paid a regular salary for the overtime he worked or point to days where he worked more overtime than defendants officially recorded.  When pressed to provide some particularity at deposition, Reyes only stated that in 2019 he raised the issue with Nigel but he did not remember the month or the exact date of the conversation.  Reyes only suggested that he may have had a conversation with Nigel about this in "the first trimester of 2019."

Although a violation of the FLSA in the first four months of 2019 would certainly fall within the law's statute of limitations, to survive summary judgment Reyes needs to present "specific" facts supporting his claims and refuting defendants time records, which demonstrate he was accurately paid for the time he worked.  Fed. R. Civ. P. 56(e); see also Lujan, 497 U.S. at 888.  "The nonmovant, plaintiff, must do more than present evidence that is merely colorable, conclusory, or speculative and must present concrete evidence from which a reasonable juror could return a verdict in her favor."  Page v. Connecticut Department of Public Safety, 185 F. Supp. 2d 149, 152 (D. Conn. 2002); see also Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997) ("conclusory allegations and self-serving affidavits, if not supported by evidence in the record, will not preclude summary judgment.").

9

A jury could not reasonably find that any failure to pay wages to Reyes during the statutory period based solely on Reyes' vague testimony – and that is all plaintiffs have offered. Without any messages, paystubs, or even non-conclusory testimony concerning specific hours worked, Reyes cannot sustain his claim.

**CONCLUSION**

Defendants' motion for summary judgment therefore denied as to Cuevas and granted as to Reyes.

**SO ORDERED.**

Digitally signed by Brian
M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 18, 2022